[No. B139597. Second Dist., Div. Five. May 10, 2001.]

THE PEOPLE, Plaintiff and Respondent, v.
JUAN GABRIEL HERRERA et al., Defendants and Appellants.

**[Opinion certified for partial publication.\*]**

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part III.D.

1354

## COUNSEL

John Steinberg and Mark D. Lenenberg, under appointments by the Court of Appeal, for Defendants and Appellants.

Bill Lockyer, Attorney General, David P. Druliner, Chief Assistant Attorney General, Carol Wendelin Pollack, Assistant Attorney General, Steven D. Matthews and Jennevee H. De Guzman, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**TURNER, P. J.—**

## I. INTRODUCTION

Defendants, Juan Gabriel Herrera and Efren Hernandez, appeal from their convictions for first degree murder (Pen. Code,[1] § 187) and attempted murder. (§§ 664, 187.) The jury made several special findings which will be discussed shortly. In the published portion of this opinion, we discuss the effect of the section 186.22 gang enhancements on Mr. Hernandez's indeterminate prison terms. Further, we discuss defendants' rights to presentence credits in the published portion of this opinion. (§ 12022.53, subd. (e).) We affirm the judgment in part and reverse it in part.

## II. FACTUAL BACKGROUND

We view the evidence in a light most favorable to the judgment. (*Jackson v. Virginia* (1979) 443 U.S. 307, 319 [99 S.Ct. 2781, 2789, 61 L.Ed.2d 560]; *People v. Osband* (1996) 13 Cal.4th 622, 690 [55 Cal.Rptr.2d 26, 919 P.2d 640]; *Taylor v. Stainer* (9th Cir. 1994) 31 F.3d 907, 908-909.) During the month of March 1999, Jose Cruz was confronted by Mr. Herrera, Mr. Hernandez, and Mr. Robles, who were members of a gang. Mr. Cruz had been a member of another gang 10 years prior to March 1999. The trio asked what gang Mr. Cruz was from. Mr. Cruz responded that he "didn't play that anymore." The trio told Mr. Cruz that he was in their neighborhood. Mr. Cruz knew Mr. Herrera, Mr. Hernandez, and Mr. Robles by their names and their gang monikers, "Frosty," "Chato," and "Tattoo" respectively. When the three men got out of their car and began to walk toward Mr. Cruz, he called for his three brothers to come outside. When Mr. Herrera, Mr. Hernandez, and Mr. Robles realized they were outnumbered, they returned to their car.

At approximately 9:00 p.m. on March 13, 1999, Mr. Cruz went with Ramon Regis and Ismael C. to El Taco Loco restaurant. Ismael C. got out of the car while Mr. Regis and Mr. Cruz waited for a parking space to become available. Ismael C. went to a nearby public telephone. Once they parked, they were confronted by Mr. Herrera, Mr. Hernandez, and Mr. Robles as well as three or four other individuals. Mr. Cruz was confronted by Mr. Hernandez. Mr. Cruz was then asked where he was from and what was he doing there. Mr. Cruz explained again: "I don't play that; I'm an old man. I don't play that anymore. I got kids. I'm old enough to be your dad. I don't play that." Mr. Herrera repeatedly referred to his gang affiliation. Mr.

---

[1]All further statutory references are to the Penal Code unless otherwise indicated.

Herrera began "throwing up [gang] signs." Mr. Regis got out of the car stating: "Hey, kickback. I'm from Long Beach too. I'm from [a gang]."

Mr. Hernandez began shooting at Mr. Cruz and Mr. Regis. Mr. Cruz and Mr. Regis were shot as they ran. Mr. Cruz was shot in the ribs. He heard bullets flying past him. Mr. Cruz was shot again in the buttocks. Mr. Hernandez continued to chase and shoot at Mr. Regis. Mr. Herrera followed Mr. Hernandez. Mr. Herrera picked up empty casings fired from Mr. Hernandez's firearm. Mr. Regis died at the scene of gunshot wounds to his chest and wrist.

## III. DISCUSSION

### A. *The Count 1 Gang Enhancement Imposed on Mr. Hernandez*

As noted previously, Mr. Hernandez was convicted as to count 1 of first degree murder. Additionally, as to count 1, the jury found Mr. Hernandez personally used a firearm within the meaning of section 12022.53, subdivisions (d) and (e)(1). The jurors further found that first degree murder was committed "for the benefit of, at the direction of, and in association with a street gang with the specific intent to promote, further and assist in criminal conduct by gang members" within the meaning of section 186.22, subdivision (b)(1). Mr. Hernandez's count 1 sentence was as follows. For first degree murder, Mr. Hernandez was sentenced to 25 years to life. For personal firearm use, Mr. Hernandez received another 25-year-to-life sentence. For the section 186.22 gang enhancement, defendant received an additional determinate term of three years. ▮ On appeal, Mr. Hernandez argues that the three-year section 186.22 enhancement could not be imposed. Rather, he argues that the effect of the section 186.22 finding is that he must serve a 15-year minimum term before he can be considered for parole. Mr. Hernandez argues in part: "When the criminal street gang enhancement is applied to punishments of imprisonment for life, only the minimum parole term provided by section 186.22, subdivision (b)(4), and not the determinate enhancement provided by section 186.22, subdivision (b)(1), is applicable . . . . [¶] Accordingly, it was error to add the determinate street gang enhancements to appellant's sentence and the enhancements must be stricken and replaced with a minimum period of imprisonment prior to parole of 15 years." We, with respect, disagree.

For the following reasons, we conclude Mr. Hernandez must, for first degree murder, serve 25 years at a minimum before he may be paroled on the crime charged in count 1. Three statutes, one resulting from the initiative process, are relevant to our conclusion. As relevant to this case, section 190,

subdivisions (a) and (e) defines the sentence for first degree murder where no special circumstances are found to exist as follows: "(a) Every person guilty of murder in the first degree shall be punished by . . . imprisonment in the state prison for a term of 25 years to life. . . . [¶] . . . [¶] (e) Article 2.5 (commencing with Section 2930) of Chapter 7 of Title 1 of Part 3 shall not apply to reduce any minimum term of a sentence imposed pursuant to this section. A person sentenced pursuant to this section shall not be released on parole prior to serving the minimum term of confinement prescribed by this section." Section 190 has been enacted by various initiatives approved by the voters.

The relevant provisions of the section 186.22 gang enhancement provisions, as it was in effect in 1999 when the murder occurred are as follows: "(b)(1) Except as provided in paragraph (4), any person who is convicted of a felony committed for the benefit of, at the direction of, or in association with any criminal street gang, with the specific intent to promote, further, or assist in any criminal conduct by gang members, shall, upon conviction of that felony, in addition and consecutive to the punishment prescribed for the felony or attempted felony of which he or she has been convicted, be punished by an additional term of one, two, or three years at the court's discretion. [¶] . . . [¶] (4) Any person who violates this subdivision in the commission of a felony punishable by imprisonment in the state prison for life, shall not be paroled until a minimum of 15 calendar years have been served." (Stats. 1997, ch. 500, § 2.)[2]

Of final consequence to our discussion is section 12022.53, subdivisions (d) and (e), which provide in part: "(d) Notwithstanding any other provision of law, any person who is convicted of a felony specified in subdivision (a), Section 246, or subdivision (c) or (d) of Section 12034, and who in the commission of that felony intentionally and personally discharged a firearm and proximately caused great bodily injury, as defined in Section 12022.7, or death, to any person other than an accomplice, shall be punished by a term of imprisonment of 25 years to life in the state prison, which shall be imposed in addition and consecutive to the punishment prescribed for that felony. [¶] (e)(1) The enhancements specified in this section shall apply to any person charged as a principal in the commission of an offense that includes an allegation pursuant to this section when a violation of both this section

---

[2]Section 186.22 was later amended in the March 7, 2000, Primary Election as part of Proposition 21, the Gang Violence and Juvenile Crime Prevention Act of 1998. In section 4 of Proposition 21, the three determinate terms in section 186.22, subdivision (b) (1) were increased from "one, two, or three years" to "two, three or four years." Also, section 186.22, subdivision (b)(4), the provision cited in the body of this opinion was moved to subdivision (b)(5). Proposition 21 made other changes to section 186.22 that are irrelevant to the present case.

and subdivision (b) of Section 186.22 are pled and proved. [¶] (2) An enhancement for participation in a criminal street gang pursuant to Chapter 11 (commencing with Section 186.20) of Title 7 of Part 1, shall not be imposed on a person in addition to an enhancement imposed pursuant to this subdivision, unless the person personally used or personally discharged a firearm in the commission of the offense."

We conclude that the 15-year minimum term specified in former section 186.22, subdivision (4), which in 1999 was the result of a legislative enactment, cannot reduce the 25-year-to-life term specified in section 190, subdivisions (a) and (e), which was the result of an initiative approved by the voters. Because section 190 was the result of an initiative enactment, it could only be amended with the approval of the voters. (Cal. Const., art. II, § 10, subd. (c); *Kopp v. Fair Pol. Practices Com.* (1995) 11 Cal.4th 607, 660-661 [47 Cal.Rptr.2d 108, 905 P.2d 1248]; *People v. Sipe* (1995) 36 Cal.App.4th 468, 482-483 [42 Cal.Rptr.2d 266].)

Since November 7, 1978, section 190 has been the result of initiative measures approved by the voters. Prior to November 7, 1978, section 190 had been a legislatively enacted statute which prescribed the punishment for murder. (See Historical Note, Deering's Ann. Pen. Code (1985 ed.) foll. § 190, p. 82.) Section 190 was amended in its entirety by Proposition 7 in the November 7, 1978, General Election to state: "Every person guilty of murder in the first degree shall suffer death, confinement in state prison for life without the possibility of parole, or confinement in the state prison for a term of 25 years to life. The penalty to be applied shall be determined as provided in Sections 190.1, 190.2, 190.3, 190.4, and 190.5. [¶] Every person guilty of murder in the second degree shall suffer confinement in the state prison for a term of 15 years to life. [¶] The provisions of Article 2.5 (commencing with Section 2930) of Chapter 7 of Title 1 of Part 3 of the Penal Code shall apply to reduce any minimum term of 25 or 15 years in a state prison imposed pursuant to this section, but such person shall not otherwise be released on parole prior to such time." (Ballot Pamp., Gen. Elec. (Nov. 7, 1978) Text of Proposed Law, Prop. 7, p. 33, italics omitted.) The summary of Proposition 7 prepared by the Attorney General indicated in terms of the credit issues, "Prohibits parole of convicted murderers before service of 25 or 15 year terms, subject to good-time credit." (Ballot Pamp., Gen. Elec., *supra*, summary of Attorney General of Prop. 7, p. 32.) The Legislative Analyst's analysis for Proposition 7 states: "The measure provides that individuals convicted of first degree murder and sentenced to life imprisonment shall serve a minimum of 25 years, less whatever credit for good behavior they have earned, before they can be eligible for parole. Accordingly, anyone sentenced to life imprisonment would have to serve at

least 16 years and eight months. The penalty for second degree murder would be increased to 15 years to life imprisonment. A person sentenced to 15 years would have to serve at least 10 years before becoming eligible for parole." (Ballot Pamp., Gen. Elec., *supra*, analysis of Prop. 7 by Legislative Analyst, p. 32.) There is nothing in the ballot pamphlet prepared for Proposition 7 that directly discusses any issue of presentence credits. What is clear from the express language of Proposition 7 and the voter pamphlet is that earned credits for good conduct would reduce a second degree murder term.

In 1987, the Legislature proposed an amendment to section 190. (Stats. 1987, ch. 1006, § 1, pp. 3367-3368.) Because the then existing provisions of section 190 in its entirety were the result of the initiative process, the Legislature directed that the issue of the 1987 amendment be submitted to the voters as follows: "Section 1 of this act amends an initiative statute and shall become effective only when submitted to and approved by the electors pursuant to subdivision (c) of section 10 of Article II of the California Constitution." (Stats. 1987, ch. 1006, § 2, p. 3368.) The amendment to the 1978 version of section 190, which was adopted as part of Proposition 67 at the June 7, 1988, Primary Election, provided as follows: "Every person guilty of murder in the first degree shall suffer death, confinement in state prison for life without possibility of parole, or confinement in the state prison for a term of 25 years to life. The penalty to be applied shall be determined as provided in Sections 190.1, 190.2, 190.3, 190.4, and 190.5. [¶] Except as provided in subdivision (b), every person guilty of murder in the second degree shall suffer confinement in the state prison for a term of 15 years to life. [¶] The provisions of Article 2.5 (commencing with Section 2930) of Chapter 7 of Title 1 of Part 3 of the Penal Code shall apply to reduce any minimum term of 25 or 15 years in a state prison imposed pursuant to this section, but such person shall not otherwise be released on parole prior to such time." (Ballot Pamp., Primary Elec. (June 7, 1988) text of Prop. 67, p. 9, italics omitted.) The final paragraph of section 190, subdivision (a), relating to section 2930 et seq. and adopted as part of Proposition 67 in the June 7, 1988, Primary Election also appeared in a modified form in section 190, subdivision (b), which set a term of 25 years to life for second degree murders of peace officers. Section 190, subdivision (b), adopted as part of Proposition 67 in the June 7, 1988, Primary Election, stated: "Every person guilty of murder in the second degree shall suffer confinement in the state prison for a term of 25 years to life if the victim was a peace officer, as defined in subdivision (a) of Section 830.1, subdivision (a) or (b) of Section 830.2, or Section 830.5, who was killed while engaged in the performance of his or her duties, and the defendant knew or reasonably should have known that the victim was such a peace officer engaged in

the performance of his or her duties. [¶] The provisions of Article 2.5 (commencing with Section 2930) of Chapter 7 of Title 1 of Part 3 of the Penal Code shall not apply to reduce any minimum term of 25 years in state prison when the person is guilty of murder in the second degree and the victim was a peace officer, as defined in this subdivision, and such person shall not be released prior to serving 25 years confinement." (Ballot Pamp., Primary Elec., *supra*, Text of Prop. 67, p. 9, italics omitted.)

The voter pamphlet for Proposition 67 on the June 7, 1988, Primary Election only discussed the new punishment for second degree murder when the victim was a peace officer. The Legislative Analyst's analysis stated: "Current law allows state prison inmates to earn credits to reduce their time in prison. According to the State Attorney General, persons sentenced for 25 years to life in state prison for first degree murder and persons sentenced for second degree murder can reduce their prison time by up to one-third by earning credits for (1) good behavior and (2) participation in prison education or training programs. The earned credits, however, do not automatically establish the time of release. That date is decided by the Board of Prison Terms." (Ballot Pamp., Primary Elec., *supra*, Legislative Analyst's analysis of Prop. 67, p. 8.) At another point the Legislative Analyst noted: "The measure also requires these convicted persons to spend at least 25 years in prison. They may not earn credits to reduce their prison time." (*Ibid.*)

Section 190 was amended again in 1994. The genesis of the 1994 changes to section 190 was a series of amendments to the Penal Code, which passed the Legislature as part of Senate Bill No. 310, 1993-1994 Regular Session, and that appear at Statutes 1993, chapter 609, sections 2, 3, and 6, pages 3265-3266 and 3269. Section 3 of Senate Bill No. 310 (1993-1994 Reg. Sess.) amended section 190 to add subdivision (c), which stated in its entirety: "(c) Every person guilty of murder in the second degree shall suffer confinement in the state prison for a term of 20 years to life if the killing was perpetrated by means of shooting a firearm from a motor vehicle, intentionally at another person outside of the vehicle with the intent to inflict great bodily injury. [¶] Article 2.5 (commencing with Section 2930) of Chapter 7 of Title 1 of Part 3 shall apply to reduce any minimum term of 20 years in the state prison when the person is guilty of murder in the second degree and is subject to this subdivision, but the person shall not otherwise be released on parole prior to that time." (Stats. 1993, ch. 609, § 3, p. 3266.) In order to become effective, section 190 also had to be approved by the voters. The amended provisions of section 190 were adopted by the voters as part of Proposition 179 at the June 7, 1994, Primary Election. There was no pertinent discussion concerning conduct or other credits in the voter's pamphlet. (Ballot Pamp., Primary Elec. (June 7, 1994) Prop. 179, pp. 22-23.)

The final amendment to section 190 was the result of legislative action in 1996 and 1997 and voter approval in 1998. In 1996, the Legislature passed Senate Bill No. 1231 (1995-1996 Reg. Sess.), which, subject to voter approval, modified section 190. In 1997, again subject to voter approval, the Legislature passed Assembly Bill No. 446 (1997-1998 Reg. Sess.), which set forth the current version of section 190, which states in its entirety: "(a) Every person guilty of murder in the first degree shall be punished by death, imprisonment in the state prison for life without the possibility of parole, or imprisonment in the state prison for a term of 25 years to life. The penalty to be applied shall be determined as provided in Sections 190.1, 190.2, 190.3, 190.4, and 190.5. [¶] Except as provided in subdivision (b), (c), or (d), every person guilty of murder in the second degree shall be punished by imprisonment in the state prison for a term of 15 years to life. [¶] (b) Except as provided in subdivision (c), every person guilty of murder in the second degree shall be punished by imprisonment in the state prison for a term of 25 years to life if the victim was a peace officer, as defined in subdivision (a) of Section 830.1, subdivision (a), (b), or (c) of Section 830.2, subdivision (a) of Section 830.33, or Section 830.5, who was killed while engaged in the performance of his or her duties, and the defendant knew, or reasonably should have known, that the victim was a peace officer engaged in the performance of his or her duties. [¶] (c) Every person guilty of murder in the second degree shall be punished by imprisonment in the state prison for a term of life without the possibility of parole if the victim was a peace officer, as defined in subdivision (a) of Section 830.1, subdivision (a), (b), or (c) of Section 830.2, subdivision (a) of Section 830.33, or Section 830.5, who was killed while engaged in the performance of his or her duties, and the defendant knew, or reasonably should have known, that the victim was a peace officer engaged in the performance of his or her duties, and any of the following facts has been charged and found true: [¶] (1) The defendant specifically intended to kill the peace officer. [¶] (2) The defendant specifically intended to inflict great bodily injury, as defined in Section 12022.7, on a peace officer. [¶] (3) The defendant personally used a dangerous or deadly weapon in the commission of the offense, in violation of subdivision (b) of Section 12022. [¶] (4) The defendant personally used a firearm in the commission of the offense, in violation of Section 12022.5. [¶] (d) Every person guilty of murder in the second degree shall be punished by imprisonment in the state prison for a term of 20 years to life if the killing was perpetrated by means of shooting a firearm from a motor vehicle, intentionally at another person outside of the vehicle with the intent to inflict great bodily injury. [¶] (e) Article 2.5 (commencing with Section 2930) of Chapter 7 of Title 1 of Part 3 shall not apply to reduce any minimum term of a sentence imposed pursuant to this section. A person sentenced pursuant to this section shall not be released on parole prior to serving the minimum

term of confinement prescribed by this section." (§ 190, subds. (a)-(e).) The present version of section 190 was adopted by the voters at the June 2, 1998, Primary Election as Proposition 222.

The ballot pamphlet prepared for the June 2, 1998, Primary Election contained an analysis of the issue of credits. The summary prepared by the Attorney General stated, "Persons convicted of any murder may not earn credits in prison to reduce the sentence." (Ballot Pamp., Primary Elec. (June 2, 1998) summary of Prop. 222, p. 14.) The Legislative Analyst's analysis stated: "State law provides that certain prison inmates who participate in work and education programs or who demonstrate good conduct while in prison shall receive credits that reduce the time they must stay in prison. However, any person convicted of second degree murder of a peace officer is ineligible to receive these credits." (Ballot Pamp., Primary Elec., *supra*, Legislative Analyst's analysis of Prop. 222, p. 14.) The Legislative Analyst then noted the change in the law which would be accomplished by Proposition 222 as follows, "This proposition provides that no person convicted of murder is eligible to receive credits that reduce the time he or she spends in state prison. . . ." (*Ibid.*) The argument in favor of Proposition 222 authored by Assemblymember Rod Pacheco, Senator John R. Lewis, and Governor Pete Wilson noted: "Proposition 222 also prohibits convicted killers from using 'work credits' to speed their release from prison before serving their entire sentence. Under current law, murderers can use work credits to reduce their prison sentences by 15% to 33%. [¶] Proposition 222 prevents violent criminals from manipulating the work credits system, requires them to serve their entire prison sentence." (Ballot Pamp., Primary Elec., *supra*, argument in favor of Prop. 222, p. 15.) At another point, the argument in favor of Proposition 222 stated, "Criminals convicted of 2nd degree murder would have to serve at least 15 years under Proposition 222, with no possibility of early parole." (*Ibid.*)

The foregoing historical analysis demonstrates that the voters intended a first degree murderer serve a 25-year term before being paroled. Mr. Hernandez argues that former section 186.22, subdivision (b)(4) required he be eligible for parole after serving only 15 years.[3] Because section 186.22, subdivision (b)(4) in 1999 was the result of a legislative enactment, it could not contravene section 190, subdivision (a) requirement that defendant serve 25 years before being considered for parole which was the product of a voter approved initiative. (Cal. Const., art. II, § 10; *Kopp v. Fair Pol. Practices Com. supra*, 11 Cal.4th at pp. 660-661.) Therefore, the argument that the three-year sentence must be vacated and defendant be eligible for parole as to count 1 after only 15 years is without merit.

---

[3]Former section 186.22, subdivision (b)(4) is now found in subdivision (b)(5).

The question remains as to the three-year term imposed under count 1. As it was in effect in 1999, section 186.22, subdivision (b)(1) stated in part that "[e]xcept as provided in paragraph (4)," the court was to impose a one-, two-, or three-year additional term to that specified for the underlying felony. As we have noted though, section 186.22, subdivision (b)(4) cannot constitutionally apply in this case; the 15-year statutorily adopted minimum term is inconsistent with the 25-year minimum term chosen by the voters through the initiative process. We construe the language in section 186.22, former subdivision (b)(1) "[e]xcept as provided by paragraph (4)" to mean that if paragraph (4) is inapplicable for any reason, then the one of the three determinate terms applies to the defendant. The three-year section 186.22, subdivision (b)(1) enhancement as to count 1 is therefore affirmed.

The parties refer us to *People v. Ortiz* (1997) 57 Cal.App.4th 480, 485-486 [67 Cal.Rptr.2d 126], an opinion authored by our recently retired colleague, Associate Justice Thomas F. Crosby, Jr. In *Ortiz*, the court held that when the then section 186.22, subdivision (b)(2) minimum 15-year parole eligibility term applies, the determinate enhancement in section 186.22, subdivision (b)(1) cannot apply. *Ortiz* involved a murder that occurred on March 12, 1995. (57 Cal.App.4th at p. 483.) In *Ortiz*, the then section 186.22, subdivision (b)(2) 15-year minimum parole eligibility date applied to the accused. (Stats. 1994, ch. 451, § 1, pp. 2438-2439.) The *Ortiz* court noted in a decision filed before the June 2, 1998, adoption of Proposition 222, "Nothing in Penal Code section 186.22, [former] subdivision (b)[(2)] suggests this extended parole eligibility limitation period should be combined with an additional determinate term." (57 Cal.App.4th at pp. 485-486.)

Our decision is not controlled by *Ortiz*. In the present case, defendant is not subject to both the former section 186.22, subdivision (b)(4) (now subd. (b)(5)) minimum 15-year parole eligibility term and the determinate enhancement in section 186.22, subdivision (b)(1). We have held that the former section 186.22, subdivision (b)(4) (now subd. (b)(5)) minimum 15-year parole eligibility term may not constitutionally apply; it is inconsistent with the voter enacted 25-year minimum period of incarceration in section 190, subdivision (a). Hence, unlike the situation discussed in *Ortiz*, both of the additional punishments have *not* been imposed. Further, our analysis is based on the effect of article II, section 10, subdivision (c) of the California Constitution on the 25-year minimum period of confinement in section 190, subdivision (a) for a first degree murderer who committed a killing filed after the June 2, 1998, adoption of Proposition 222 when contrasted with the more restricted impact of a legislative enactment; an issue neither raised nor discussed in *Ortiz*.

Finally, even if the *Ortiz* analysis, as posited by Mr. Hernandez, was directly pertinent we would be unable to follow it. *Ortiz*, as construed by Mr.

Hernandez, holds that a first degree murderer who receives a sentence of 25 years to life is eligible for parole after 15 years. Section 190, subdivision (a), an enactment of the voters, requires that the defendant serve at least 25 years of confinement. That is exactly what section 190, subdivision (a) states and it so stated on March 12, 1995, when the homicide in *Ortiz* was committed. (See *ante*, at pp. 1362-1363.) Parole after 15 years would be inconsistent with the clearly expressed decision of the voters that no release occur until after at least 25 years of confinement have expired. Mr. Hernandez's reasoning that he can receive a 25-year-to-life sentence but need only wait 15 years for release on parole is without merit—he must serve 25 years, not 15 years of confinement before release on parole is possible.

### B. *The Count 2 Gang Enhancement Imposed on Mr. Hernandez*

■ At the suggestion of the prosecutor, the trial court imposed only an eight-month section 186.22 enhancement on Mr. Hernandez's life term for willful, deliberate, and premeditated attempted murder. Unlike count 1, Mr. Hernandez's count 2 life sentence was imposed under the authority of a statute adopted by the Legislature, section 664, subdivision (a).[4] (Stats. 1986, ch. 519, § 2, p. 1859.) Therefore, the 15-year minimum term requirement in section 186.22, subdivision (b)(4) is fully applicable to count 2 for which defendant has received a life term. The eight-month enhancement is reversed and the judgment is modified to state that defendant is to serve a life term subject to the 15-year minimum term in section 186.22, subdivision (b)(4), as required by section 186.22.

### C. *Presentence Credits for Both Mr. Hernandez and Mr. Herrera*

■ The trial court denied any presentence credits for both Mr. Hernandez and Mr. Herrera. We asked the parties to address the correctness of this order. Section 2900.5, subdivision (a) states in pertinent part: "In all felony . . . convictions . . . when the defendant has been in custody, including . . . any time spent in a jail, . . . all days of custody of the defendant . . . ,

---

[4]Section 664, subdivision (a) states in relevant part: "Every person who attempts to commit any crime, but fails, or is prevented or intercepted in its perpetration, shall be punished where no provision is made by law for the punishment of those attempts, as follows: [¶] (a) If the crime attempted is punishable by imprisonment in the state prison, the person guilty of the attempt shall be punished by imprisonment in the state prison for one-half the term of imprisonment prescribed upon a conviction of the offense attempted. However, if the crime attempted is willful, deliberate, and premeditated murder, as defined in Section 189, the person guilty of that attempt shall be punished by imprisonment in the state prison for life with the possibility of parole. . . . The additional term provided in this section for attempted willful, deliberate, and premeditated murder shall not be imposed unless the fact that the attempted murder was willful, deliberate, and premeditated is charged in the accusatory pleading and admitted or found to be true by the trier of fact."

and including days credited to the period of confinement pursuant to Section 4019, shall be credited upon [the] term of imprisonment . . . ."

As noted previously, section 190, subdivision (e) states: "Article 2.5 (commencing with Section 2930) of Chapter 7 of Title 1 of Part 3 shall not apply to reduce any minimum term of a sentence imposed pursuant to this section. A person sentenced pursuant to this section shall not be released on parole prior to serving the minimum term of confinement prescribed by this section." The provisions of article 2.5 of the Penal Code commencing with section 2930 refer only to *postsentence* credits. (*People v. Thomas* (1999) 21 Cal.4th 1122, 1125 [90 Cal.Rptr.2d 642, 988 P.2d 563].) Convicted murderers are required to serve the "minimum term of confinement." Section 190, subdivision (e) does not state where that confinement is to occur. Also, the unambiguous language in section 2900.5, subdivision (a) grants all defendants presentence credits. Nothing in section 190, subdivision (e) denies presentence credits for time actually served to a post-June 2, 1998, first degree murderer. Therefore, defendants are entitled to presentence credits for time served.

However, the issue is entirely different in terms of presentence conduct credits. Section 2933.2 states in pertinent part: "(a) Notwithstanding Section 2933.1 or any other law, any person who is convicted of murder, as defined in Section 187, shall not accrue any credit, as specified in Section 2933. [¶] . . . [¶] (c) Notwithstanding Section 4019 or any other provision of law, no credit pursuant to Section 4019 may be earned against a period of confinement in, or commitment to, a county jail, industrial farm, or road camp, or a city jail, industrial farm, or road camp, following arrest for any person specified in subdivision (a). [¶] (d) This section shall only apply to murder that is committed on or after the date on which this section becomes operative." The plain language of section 2933.2 prohibits a grant of presentence conduct credits to convicted murderers after the effective date of the statute. Section 2933.2 was adopted by the Legislature in 1996 as part of Senate Bill No. 1231 (1995-1996 Reg. Sess.), section 3. (Stats. 1996, ch. 598, § 3.) The uncodified provisions of Senate Bill No. 1231 state that section 2933.2 was to become effective only if proposed changes to section 190 were ultimately adopted on June 2, 1998, by the voters. (Stats. 1996, ch. 598, § 4; Legis. Counsel's Dig., Sen. Bill No. 1231 (1995-1996 Reg. Sess.); Assem. Com. on Appropriations, Rep. on Sen. Bill No. 1231 (1995-1996 Reg. Sess.) July 10, 1996, p. 1; Sen. Rules Com., Office of Sen. Floor Analyses, 3d reading analysis of Sen. Bill No. 1231 (1995-1996 Reg. Sess.) Jan. 30, 1996, p. 1.) These proposed changes in section 190 are discussed *ante*, at pages 1362-1363. Proposed section 190, subdivision (e), which was adopted by the voters on June 2, 1998, prevented convicted murders from

receiving post-sentence conduct credits as otherwise permitted by section 2930 et seq. (See Ballot Pamp., Primary Elec., *supra*, argument in favor of Prop. 222, p. 15.) Section 2933.2 adopted the same rule for presentence conduct credits. Defendants committed the murder in the present case after June 2, 1998; hence, section 2933.2 applies to them and they are not entitled to any presentence conduct credits.

Mr. Herrera was arrested on April 29, 1999. Mr. Herrera was sentenced on February 28, 2000, and is entitled to 306 days of presentence credit for time actually served. Mr. Hernandez was arrested on April 14, 1999. Mr. Hernandez was sentenced on February 28, 2000, and is entitled to 321 days of presentence credit for time actually served.

D.   *Unpublished Issue**

.  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .

## IV. DISPOSITION

The judgments are modified to state the following. Defendant Efren Hernandez is sentenced under count 1, first degree murder, to a sentence of 25 years to life. For personal firearm use, he is to serve a consecutive sentence of 25 years to life. He is to serve an additional three-year term by reason of the gang enhancement. As to count 2, he is to serve a consecutive sentence of life in prison with a 15-year minimum term. Under count 2, he is to serve a consecutive term of 25 years to life for firearm use. All sentences are to run consecutive, one to another. He is to receive presentence credits of 321 days for time served prior to the imposition of sentence.

Defendant Juan Gabriel Herrera is sentenced under count 1, first degree murder, to a sentence of 25 years to life. For firearm use by a principal in the commission of the first degree murder, he is to serve a consecutive sentence of 25 years to life. He is to serve an additional three-year term by reason of the gang enhancement. As to count 2, he is to serve a consecutive sentence of life in prison. Under count 2, he is to serve a consecutive term of 25 years to life for firearm use. All sentences are to run consecutive, one to another. He is to receive presentence credits of 306 days for time served prior to the imposition of sentence.

The judgment is affirmed in all other respects. The clerk of superior court is directed to prepare an amended abstract of judgment which sets forth the

*See footnote, *ante*, page 1353.

verdicts of the jury including all special findings as well as the sentences imposed and forward it to the Department of Corrections.

Willhite, J.,* concurred.

**GRIGNON, J.,** Concurring and Dissenting.—I dissent from that portion of the majority opinion which concludes the trial court properly imposed a three-year gang enhancement pursuant to Penal Code section 186.22, subdivision (b)(1)[1] on defendant Efren Hernandez's 25-year-to-life sentence for first degree murder. I concur in the balance of the majority opinion.

In the first place, the majority mistakenly attributes to defendant Hernandez an argument which he does not make. Defendant Hernandez contends the trial court erred when it imposed a three-year gang enhancement pursuant to Penal Code section 186.22, subdivision (b)(1) instead of a 15-year minimum term pursuant to Penal Code section 186.22, subdivision (b)(4).[2] He does not contend the 15-year minimum term supersedes the mandatory 25-year minimum term of Penal Code section 190, subdivisions (a) and (e). In fact, he raises no issue concerning the effect of the 15-year minimum term, probably in the hope it will be subsumed in the 25-year minimum term for the murder.

Second, I disagree with the majority on the merits. Penal Code section 186.22, subdivision (b)(1) provides in relevant part that, except as provided in subparagraph (b)(4), a consecutive one-, two- or three-year enhancement is to be imposed on defendants who are convicted of felonies committed in connection with criminal street gangs.[3] Penal Code section 186.22, subdivision (b)(4) provides in relevant part: "Any person who violates this subdivision in the commission of a felony punishable by imprisonment in the state prison for life, shall not be paroled until a minimum of 15 calendar years have been served." This language is crystal clear. Where a defendant receives a life sentence, the 15-year minimum term applies instead of the one-,

---

*Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

[1]All statutes cited in this opinion are those in effect in 1999 at the time the offenses were committed. The statutes have been amended subsequently in ways that do not affect the conclusions reached in this opinion.

[2]Subdivision (b)(4) of Penal Code section 186.22 has been renumbered as (b)(5).

[3]Penal Code section 186.22, subdivision (b)(1) provided: "Except as provided in paragraph (4), any person who is convicted of a felony committed for the benefit of, at the direction of, or in association with any criminal street gang, with the specific intent to promote, further, or assist in any criminal conduct by gang members, shall, upon conviction of that felony, in addition and consecutive to the punishment prescribed for the felony or attempted felony of which he or she has been convicted, be punished by an additional term of one, two, or three years at the court's discretion."

two- or three-year enhancement. (*People v. Ortiz* (1997) 57 Cal.App.4th 480, 485-486 [67 Cal.Rptr.2d 126].)

In this case, defendant Hernandez was sentenced to a term of 25 years to life for first degree murder pursuant to Penal Code section 190, subdivision (a). He is entitled to no conduct credit against the 25-year minimum term and thus must serve 25 calendar years before he is eligible for parole. (Pen. Code, § 190, subd. (e).) Defendant Hernandez was further sentenced to a consecutive term of 25 years to life for the personal firearm discharge pursuant to Penal Code section 12022.53, subdivision (d). Because defendant Hernandez personally discharged a firearm in the commission of the murder, the gang penalties may be imposed in addition to the personal firearm discharge penalty. (Pen. Code, § 12022.53, subd. (e).) Thus, for the murder of Ramon Regis, defendant Hernandez was subject to the following sentence: 25 years to life, consecutive to 25 years to life, with a 15-year minimum term.

Penal Code section 3046 sets forth the parole eligibility of persons serving a life sentence. If the life sentence does not include a minimum term, the prisoner must serve seven calendar years before he or she is eligible for parole. If the life sentence includes a minimum period of confinement greater than seven years, the prisoner must serve the minimum period of confinement before he or she is eligible for parole.[4] If a prisoner has been sentenced to consecutive life sentences, the prisoner must serve the minimum term on each life sentence, before he or she is eligible for parole. Thus, defendant Hernandez must serve 25 years on each of his two consecutive life sentences before he is first eligible for parole.[5]

The question (although largely academic in this case) remains as to the effect of the 15-year minimum term provided by the gang statute. There is

---

[4]Penal Code section 3046 provided: "No prisoner imprisoned under a life sentence may be paroled until he or she has served at least seven calendar years or has served a term as established pursuant to any other section of law that establishes a minimum period of confinement under a life sentence before eligibility for parole, whichever is greater. Where two or more life sentences are ordered to run consecutively to each other pursuant to Section 669, no prisoner so imprisoned may be paroled until he or she has served at least seven calendar years, or has served a term as established pursuant to any other section of law that establishes a minimum period of confinement under a life sentence before eligibility for parole, on each of the life sentences which are ordered to run consecutively, whichever is greater. The Board of Prison Terms shall, in considering a parole for a prisoner, consider all statements and recommendations which may have been submitted by the judge, district attorney, and sheriff, pursuant to Section 1203.01, or in response to notices given under Section 3042, and recommendations of other persons interested in the granting or denying of the parole. The board shall enter on its order granting or denying parole to these prisoners, the fact that the statements and recommendations have been considered by it."

[5]This discussion ignores for purposes of clarity the consecutive life sentence for the attempted murder of Jose Cruz with a 15-year minimum term, and the consecutive personal firearm discharge 25-year-to-life term.

no statutory provision prescribing a mandatory effect. The 15-year minimum term is not a sentence enhancement, but rather is an alternate penalty for the underlying felony conviction.[6] (*People v. Jefferson* (1999) 21 Cal.4th 86, 101 [86 Cal.Rptr.2d 893, 980 P.2d 441].) Since the penalty for the underlying felony is greater than the alternate gang minimum term, the gang minimum term has no mandatory effect. However, it is one of the considerations the Board of Prison Terms may take into account when granting or denying parole to a prisoner who is eligible for parole.

I would conclude that the trial court erred when it imposed the three-year gang enhancement on defendant Hernandez's 25-year-to-life sentence and would modify the sentence to vacate the three-year enhancement and impose a 15-year minimum term. I would similarly modify defendant Juan Gabriel Herrera's sentence.

Petitions for a rehearing were denied June 1, 2001, and June 4, 2001, and appellants' petition for review by the Supreme Court was denied August 22, 2001.

---

[6] In the context of a 25-year-to-life sentence for first degree murder, Division Three of the Fourth Appellate District described the 15-year minimum term as "an extended parole eligibility date." (*People v. Ortiz, supra,* 57 Cal.App.4th at p. 486.) It is unclear whether the appellate court intended the 15-year minimum term to be "consecutive" to the 25-year minimum term. Although this "consecutive" effect might be the most rational result, I can find no basis for it in the Penal Code.