[No. F038303. Fifth Dist. Feb. 5, 2003.]

THE PEOPLE, Plaintiff and Respondent, v.
T.J. WHEELER, Defendant and Appellant.

**[Opinion certified for partial publication.*]**

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts II. and III.B.

## COUNSEL

Cara DeVito, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Jo Graves, Assistant Attorney General, Stephen G. Herndon and David Andrew Eldridge, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**GOMES, J.**—A jury found T.J. Wheeler guilty of first degree murder, attempted voluntary manslaughter, and discharge of a firearm at an inhabited dwelling. (Pen. Code, §§ 187, 664, 192, subd. (a), 246.) He argues his wife's statement to him shortly before the murder that she committed adultery with the man whom he killed not long afterward was violative of the hearsay rule and insufficiently trustworthy to pass confrontation clause muster. In the published portion of our opinion, we will hold that the court properly admitted his wife's statement under the social interest exception to the hearsay rule and that the evidence was sufficiently trustworthy to satisfy the confrontation clause.[1] (Evid. Code, § 1230;[2] U.S. Const., 6th & 14th Amends.)

The parties disagree whether the statutory denial of presentence custody credits to "any person who is convicted of murder" applies to the offender (entirely barring those credits) or only to the offense (allowing those credits on any offense other than murder). (Pen. Code, § 2933.2.) In the published portion of our opinion, we will hold that Penal Code section 2933.2 applies to the offender not to the offense (entirely barring those credits). In the unpublished portion of our opinion, we will address other contentions of error and direct correction of the abstract of judgment.

### FACTUAL HISTORY

Three young men—Ruben Sanchez (Ruben), his brother Jermaine Sanchez (Jermaine), and Eric Buckingham—stepped out of the Sanchez home after Wheeler asked to speak to Ruben. Referring to his wife, Gracie

---

[1]Presumably as a matter of trial tactics, Wheeler did not object to (so the trial court did not adjudicate) a multiple-level-hearsay aspect of his wife's statement. Likewise, on appeal he does not argue (so we do not adjudicate) that aspect of her statement.

[2]Statutory references not otherwise noted are to the Evidence Code.

Wheeler (Gracie), Wheeler asked, "What do you know about Gracie?" Gracie and Ruben had dated each other in high school. Jermaine said, "We don't know nothing about Gracie. Why don't you get out of here[?]" After Jermaine said, "Nobody cares about [Gracie,]" Wheeler lunged at him. Scared that Wheeler was about to hit him, Jermaine punched him twice in the face.

Wheeler fell to the ground and got up with a firearm in his hand. Ruben, Jermaine, and Buckingham took off running. Wheeler fired three rounds toward the door through which Jermaine was running back inside. Buckingham saw Wheeler outside within an arm's length of Ruben. After Jermaine and Buckingham both heard three more shots, Buckingham saw Wheeler take off in his car and saw Ruben fall to the ground.[3]

## DISCUSSION

### I. Statement Admitting Adultery

Anticipating Gracie's invocation of her spousal privilege not to testify against Wheeler, both parties sought rulings in limine on the admissibility of her statement to Wheeler about her adultery with Ruben shortly before his murder. (§ 970.) The prosecutor characterized her statement as admissible nonhearsay and, in the alternative, as admissible hearsay under the social interest exception. (§ 1230.) Wheeler characterized her statement as inadmissible hearsay. (§ 1200.) Once Gracie refused to testify, the court found her statement relevant as evidence of a motive to harm Ruben and admissible under the social interest exception.

 Wheeler argues Gracie's statement to him about her adultery with Ruben shortly before his murder was violative of the hearsay rule and insufficiently trustworthy to pass confrontation clause muster. (U.S. Const., 6th Amend.) The Attorney General argues the court committed no statutory or constitutional error in admitting the statement under the social interest exception.

Our analysis commences with the language of the statute: "Evidence of a statement [1] *by a declarant having sufficient knowledge of the subject* is not made inadmissible by the hearsay rule [2] *if the declarant is unavailable as a witness* and [3] *the statement, when made,* was so far contrary to the declarant's pecuniary or proprietary interest, or so far subjected [her] to the risk of civil or criminal liability, or so far tended to render invalid a claim by [her] against another, or *created such a risk of making [her] an object of*

---

[3] Other relevant facts appear in the discussion of the issues on appeal.

*hatred, ridicule, or social disgrace in the community, that a reasonable [wo]man in [her] position would not have made the statement unless [s]he believed it to be true.*" (§ 1230, italics added.) Wheeler agrees Gracie's statement to Wheeler about her adultery with Ruben shortly before his murder gave her "sufficient knowledge of the subject" to satisfy the first statutory requirement. He agrees her invocation of the spousal privilege satisfied the second statutory requirement since she was "unavailable as a witness." He takes issue with the third statutory requirement, which requires that her "statement, when made, . . . created such a risk of making [her] an object of hatred, ridicule, or social disgrace in the community, that a reasonable [wo]man in [her] position would not have made the statement unless [s]he believed it to be true."

California is among a minority of jurisdictions that have either adopted by statute or embraced by case law the social interest exception. (See Note, *Sin, Suffering, and "Social Interest": A Hearsay Exception for Statements Subjecting the Hearsay Declarant to "Hatred, Ridicule, or Disgrace"* (1985) 4 Rev. Litig. 367, fn. 4, 368, fn. 5 (hereafter *A Hearsay Exception*).) Even in jurisdictions that permit admission of statements against social interest, "litigants and judges rarely invoke that theory as a basis for admitting hearsay testimony." (Imwinkelried, *Declarations Against Social Interest: The (Still) Embarrassingly Neglected Hearsay Exception* (1996) 69 So.Cal. L.Rev. 1427, 1431.)

California adopted the social interest exception in 1965 as an integral part of the original Evidence Code. (§ 1230; Stats. 1965, ch. 299, § 2, p. 1340.) The intent of the Law Revision Commission, which recommended legislative adoption of the new code, was to make the social interest exception "sufficiently broad" to admit previously inadmissible statements about illegitimacy, pregnancy out of wedlock, and impotency (*A Hearsay Exception, supra*, 4 Rev. Litig. at p. 385, fn. 81): "A man admits paternity of an illegitimate child; an unmarried woman states that she is pregnant; a man states that he is impotent. Professor McCormick refers to these statements as declarations against 'social interests.' Currently such declarations are usually excluded. Under the new rule they would be admitted—in our opinion, wisely so." (Tentative Recommendation and A Study Relating to the Uniform Rules of Evidence (Aug. 1962) 4 Cal. Law Revision Com. Rep. (1963) p. 501, fns. omitted.)

Implicit in Gracie's statement about adultery was a breach of trust conspicuously absent from illegitimacy, pregnancy out of wedlock (without reference to adultery), and impotency—the three statements expressly within the contemplation of the Law Revision Commission in recommending the

admission of those statements under the social interest exception. Arguably the breach of trust that is implicit in adultery accounts in part for the "strong condemnation of adultery in all religions." (See The Oxford Dict. of World Religions (1997) p. 21 [defining "adultery"].) As one of numerous factors establishing who is and who is not "an object of . . . social disgrace in the community" (§ 1230), clerical disapprobation indubitably influences societal mores. A statement to one's spouse about adultery certainly runs no smaller risk, and arguably incurs a greater risk, of making the declarant an object of social disgrace than do any of the three statements the Law Revision Commission expressly intended the social interest exception to embrace.

Since California Supreme Court authority guides us in the construction of statutory provisions, we turn to two cases adjudicating the applicability of the social interest exception to other kinds of statements. (See *Sacramento Police Officers Assn. v. Venegas* (2002) 101 Cal.App.4th 916, 924 [124 Cal.Rptr.2d 666].) In the first case, *In re Weber* (1974) 11 Cal.3d 703 [114 Cal.Rptr. 429, 523 P.2d 229], a prison inmate who testified the petitioner solicited him to offer a bribe later told another inmate his testimony was perjury. (*Id.* at pp. 711-712.) At a posttrial evidentiary hearing, the petitioner sought in vain to introduce the statement under the social interest exception after the inmate who heard the statement invoked the privilege against self-incrimination. (*Id.* at pp. 712-713.) On the rationale that an admission of perjury might both impair and improve one's social standing in the inmate community, the Supreme Court upheld the exclusion of the statement. (*Id.* at p. 722.) In the case at bar, on the other hand, nothing in the record suggests Gracie's statement about adultery could possibly have improved her social standing with anyone.

The Supreme Court grounded the holding in *Weber* not only on doctrine intrinsic to the social interest exception but also on two extrinsic rules of law. (*In re Weber, supra,* 11 Cal.3d at p. 722.) Both of those rules derive from the "various motives" prison inmates may have "for making false statements, not the least of which is a possible desire to curry favor with the authorities." (*Ibid.*) First, evidence of a witness's posttrial offer to retract sworn testimony is to be viewed with suspicion. (*Ibid.*) Second, evidence that a fellow inmate heard a retraction is even more unworthy of belief. (*Ibid.*) In the case at bar, on the other hand, no comparable extrinsic rules of law come into play.

In the second case, *People v. Lawley* (2002) 27 Cal.4th 102 [115 Cal.Rptr.2d 614, 38 P.3d 461], a prison inmate seeking full membership in the Aryan Brotherhood told another inmate that he killed the victim on a gang contract and that an innocent person was in custody for the murder. (*Id.*

at pp. 151-155.) After the inmate who made the statement later invoked the privilege against self-incrimination, the accused sought admission of the evidence under the social interest exception. (*Id.* at p. 155.) On the rationale that the intent of the inmate's statement could have been to enhance his own prestige or that of the Aryan Brotherhood, the Supreme Court upheld the trial court's refusal to admit the evidence. (*Ibid.*) We note again, as before, that nothing in the record in the case at bar suggests Gracie's statement about adultery could have improved her social standing with anyone.

In two cases decided before section 1230 took effect in 1967, we recognized the validity of the common law precursor to the social interest exception. In the first case, *People v. Parriera* (1965) 237 Cal.App.2d 275 [46 Cal.Rptr. 835], the issue was whether the accused shot his wife or whether she shot herself. (*Id.* at p. 277.) The trial court permitted two nurses to testify they heard her volunteer she shot herself. (*Id.* at p. 282.) The trial court "severely restricted" the impact of that statement by limiting jury consideration to her credibility as a witness and by prohibiting jury consideration on the issue of her culpability as the shooter. (*Ibid.*) Noting that admissible hearsay evidence usually "has a high degree of trustworthiness" (*People v. Spriggs* (1964) 60 Cal.2d 868, 874 [36 Cal.Rptr. 841, 389 P.2d 377]), we held that to so limit the jury's consideration of that evidence was "unjust" since the wife's statement would "subject her to odium." (*People v. Parriera, supra,* at pp. 284-285.)

In the second case, *People v. Salcido* (1966) 246 Cal.App.2d 450 [54 Cal.Rptr. 820], the issue was whether the accused shot his girlfriend or whether she shot herself. (*Id.* at p. 457.) The trial court admitted the girlfriend's suicide threat. (*Ibid.*) The statement was not only probative of the identity of the shooter but also revelatory of her emotional instability and predisposition to self-destruction. (*Id.* at pp. 457-462.) In holding the statement admissible for the truth of the matter, we followed two murder cases from the late 19th and early 20th centuries on the general trustworthiness of like hearsay evidence. (*Ibid.*) In the late 19th-century case, the Supreme Court of Massachusetts ruled admissible the threat of the decedent—a single pregnant woman—to kill herself. (*Commonwealth v. Trefethen* (1892) 157 Mass. 180, 181-195 [31 N.E. 961, 961-967].) In the early 20th-century case, the Supreme Court of Missouri ruled admissible the decedent's threats—"as original evidence of the condition of the mind from which they spring"—to kill himself. (*State v. Ilgenfritz* (1915) 263 Mo. 615, 631-635 [173 S.W. 1041, 1045-1046].)

To the issue whether the court properly admitted Gracie's statement under the social interest exception to the hearsay rule, the parties agree the abuse

of discretion standard of review applies. (See *People v. Gordon* (1990) 50 Cal.3d 1223, 1252 [270 Cal.Rptr. 451, 792 P.2d 251], overruled on another ground in *People v. Edwards* (1991) 54 Cal.3d 787, 834-835 [1 Cal.Rptr.2d 696, 819 P.2d 436].) By that standard, we hold that the court committed no abuse of discretion.

Even if Gracie's statement satisfied the third statutory requirement, Wheeler argues the evidence lacked the trustworthiness necessary to pass confrontation clause muster. (U.S. Const., 6th & 14th Amends.) As one of Shakespeare's characters warned, " 'The purest treasure mortal times afford . . . [¶] Is spotless reputations, that away, [¶] Men are but [gilded] loam or painted clay.' " (*A Hearsay Exception, supra,* 4 Rev. Litig. at p. 391, fn. omitted, quoting Shakespeare, Richard II, act I, scene 1.) The human hesitancy to blemish one's " 'treasure [that] mortal times afford' " creates the circumstantial guarantee of trustworthiness that is implicit in the social interest exception. (*A Hearsay Exception, supra,* at p. 392, fn. omitted.)

A case from another state that adopted by statute the social interest exception specifically adjudicated the impact on that "treasure" of a spouse's statement about adultery. (*Muller v. State* (1980) 94 Wis.2d 450 [289 N.W.2d 570].) As in the case at bar, the cuckold in that case killed the paramour of the spouse who admitted adultery. (*Id.* at pp. 453-464 [289 N.W.2d at pp. 572-577].) The Wisconsin Supreme Court held that the spouse's statement at a civil deposition about adultery with her paramour satisfied the social interest exception since her own words "made her an 'object of disgrace.' " (*Id.* at p. 463 [289 N.W.2d at p. 577].) Noting the right to confrontation " 'is not absolute,' " the court found no confrontation clause violation. (*Id.* at pp. 463-464 [289 N.W.2d at pp. 577-578]; see *Barber v. Page* (1968) 390 U.S. 719, 722 [88 S.Ct. 1318, 1320-1321, 20 L.Ed.2d 255]; *People v. Alcala* (1992) 4 Cal.4th 742, 784 [15 Cal.Rptr.2d 432, 842 P.2d 1192].)

Although the statement in the case at bar occurred during a homicide investigation and not, as in *Muller,* during a civil deposition, the broad assumption is common to both that " 'a person is unlikely to fabricate a statement against his [or her] own interest at the time it is made.' " (*Lilly v. Virginia* (1999) 527 U.S. 116, 126-127 [119 S.Ct. 1887, 1895, 144 L.Ed.2d 117], quoting *Chambers v. Mississippi* (1973) 410 U.S. 284, 299 [93 S.Ct. 1038, 1047-1048, 35 L.Ed.2d 297].) ■ Embracing penal, proprietary, and social interests alike, the general hearsay exception for declarations against interest is a " 'firmly rooted' " doctrine with the " 'longstanding judicial and legislative experience' " to ensure " 'virtually any evidence' " within its scope " 'comports with the "substance of the constitutional protection." ' " (*Lilly v. Virginia, supra,* at p. 126 [119 S.Ct. at p. 1895],

quoting *Idaho v. Wright* (1990) 497 U.S. 805, 817 [110 S.Ct. 3139, 3147-3148, 111 L.Ed.2d 638], and *Ohio v. Roberts* (1980) 448 U.S. 56, 66 [100 S.Ct. 2531, 2539, 65 L.Ed.2d 597].) We note again, as before, that the common law roots of the social interest exception long predate the adoption of section 1230.

In the opinion of at least a plurality of the United States Supreme Court, appellate courts should independently review whether the government's proffered guarantees of the trustworthiness of a hearsay statement satisfy the confrontation clause. (*Lilly v. Virginia, supra,* 527 U.S. at p. 136 [119 S.Ct. at pp. 1899-1900].) ■ To make the original determination whether a hearsay statement "passes the required threshold of trustworthiness," trial courts " 'may take into account not just the words but the circumstances under which they were uttered, the possible motivation of the declarant, and the declarant's relationship to the defendant.' " (*People v. Cudjo* (1993) 6 Cal.4th 585, 607 [25 Cal.Rptr.2d 390, 863 P.2d 635].) ■ With no apparent motive to lie, Gracie made her statement about her relationship with the victim to her husband in a homicide investigation in which she was not a suspect. The intoxicated in-custody suspect in *Lilly,* on the other hand, trying to shift blame to other people in a homicide investigation, had every motive to lie. (*Lilly v. Virginia, supra,* at pp. 121-122 [119 S.Ct. at pp. 1893-1894].) The United States Supreme Court held that the admission of the suspect's statement in *Lilly* violated the confrontation clause. (*Id.* at p. 139 [119 S.Ct. at p. 1901].)

On the strikingly dissimilar circumstances in the case at bar, we hold that Gracie's statement was sufficiently trustworthy to satisfy the confrontation clause. In so holding, we review solely for abuse of discretion. (See *People v. Cudjo, supra,* 6 Cal.4th at p. 607.) Even were we to engage in review de novo, we would still so hold. (See *Lilly v. Virginia, supra,* 527 U.S. at pp. 136-137 [119 S.Ct. at pp. 1899-1900].)

II. *Possible Juror Misconduct**

· · · · · · · · · · · · · · · · · · · · · · · · ·

III. *Sentencing*

A. *Presentence conduct credit*

■ The Attorney General argues Penal Code section 2933.2 precludes the court's award of 100 days of presentence conduct credits, since Wheeler's

---

*See footnote, *ante,* page 1423.

count 1 conviction was for murder.[4] Wheeler argues the court properly awarded those credits since his counts 2 and 3 convictions were for other offenses.

Penal Code section 2933.2 prohibits an award of presentence conduct credits to *"any person* who is convicted of murder." (§ 2933.2, subds. (a), (c), italics added.) An analogous statute prohibits an award of presentence conduct credits to *"any person* who is convicted of a felony offense listed in Section 667.5."[5] (Former Pen. Code, § 2933.1, italics added.) In *People v. Ramos* (1996) 50 Cal.App.4th 810 [58 Cal.Rptr.2d 24] we held that "by its terms, [former Penal Code] section 2933.1 applies to the offender not to the offense and so limits a violent felon's conduct credits irrespective of whether or not all his or her offenses come within [Penal Code] section 667.5." (*Id.* at p. 817.) By parity of reasoning, we hold that Penal Code section 2933.2 applies to the offender not to the offense and so limits a murderer's conduct credits irrespective of whether or not all his or her offenses were murder. (See *People v. Herrera* (2001) 88 Cal.App.4th 1353, 1366-1367 [106 Cal.Rptr.2d 793].) We will modify the judgment and order amendment of the abstract of judgment accordingly.

B. *Penal Code section 654\**

. . . . . . . . . . . . . . . . . . . . . .

---

[4]Penal Code section 2933.2: "(a) Notwithstanding Section 2933.1 or any other law, any person who is convicted of murder, as defined in Section 187, shall not accrue any credit, as specified in Section 2933. [¶] (b) The limitation provided in subdivision (a) shall apply whether the defendant is sentenced under Chapter 4.5 (commencing with Section 1170) of Title 7 of Part 2 or sentenced under some other law. [¶] (c) Notwithstanding Section 4019 or any other provision of law, no credit pursuant to Section 4019 may be earned against a period of confinement in, or commitment to, a county jail, industrial farm, or road camp, or a city jail, industrial farm, or road camp, following arrest for any person specified in subdivision (a). [¶] (d) This section shall only apply to murder that is committed on or after the date on which this section becomes operative."

[5]Former Penal Code section 2933.1: "(a) Notwithstanding any other law, any person who is convicted of a felony offense listed in Section 667.5 shall accrue no more than 15 percent of worktime credit, as defined in Section 2933. [¶] (b) The 15 percent limitation provided in subdivision (a) shall apply whether the defendant is sentenced under Chapter 4.5 (commencing with Section 1170) of Title 7 of Part 2 or sentenced under some other law. However, nothing in subdivision (a) shall affect the requirement of any statute that the defendant serve a specified period of time prior to minimum parole eligibility, nor shall any offender otherwise statutorily ineligible for credit be eligible for credit pursuant to this section. [¶] (c) Notwithstanding Section 4019 or any other provision of law, the maximum credit that may be earned against a period of confinement in, or commitment to, a county jail, industrial farm, or road camp, or a city jail, industrial farm, or road camp, following arrest and prior to placement in the custody of the Director of Corrections, shall not exceed 15 percent of the actual period of confinement for any person specified in subdivision (a). [¶] (d) This section shall only apply to offenses listed in subdivision (a) that are committed on or after the date on which this section becomes operative."

\*See footnote, *ante*, page 1423.

### DISPOSITION

The judgment is modified to delete the award of 100 days of presentence conduct credits. (Pen. Code, § 2933.2.) The trial court shall issue an abstract of judgment so amended.

The trial court imposed consecutive 25 years to life *indeterminate* terms on the counts 1 and 3 Penal Code section 12022.53, subdivision (d) enhancements. The trial court shall issue an abstract of judgment so amended.

As so modified, the judgment is affirmed.

Dibiaso, Acting P. J., and Wiseman, J., concurred.

On March 6, 2003, the opinion was modified to read as printed above. Appellant's petition for review by the Supreme Court was denied April 23, 2003.