[No. G019145. Fourth Dist., Div. Three. Aug. 28, 1997.]

THE PEOPLE, Plaintiff and Respondent, v.
MARIO LUIS ORTIZ, Defendant and Appellant.

**COUNSEL**

Stephen Gilbert, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Keith I. Motley and Karla Davis, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

CROSBY, J.—A jury convicted Mario Luis Ortiz of murder and second degree robbery and found vicarious firearm and criminal street gang enhancements to be true. Ortiz contends the evidence was insufficient to support the Penal Code section 186.22, subdivision (b)(1) gang enhancement, the trial court erred in imposing three years consecutive per Penal Code section 186.22, subdivision (b)(4), and the overall sentence constitutes cruel and unusual punishment. Only the second contention has merit.

I

East Side Longo Barrio Viejo (ESL) gang members Ortiz, age 14, and Oscar Lemus, "Termite," wanted revenge against the Insane Crips gang. They planned to rob a 24-hour service station and pin the deed on their rivals. They believed the Crips had framed an ESL member for murder.

On March 12, 1995, Lemus stored a handgun in a secret compartment in his car. Sometime after 3:47 a.m., Ortiz, Lemus, and two female companions arrived and parked at the station. They told the girls they were there to use the restroom. Lemus retrieved the pistol before they left the car.

Ortiz first met the store clerk, Danette Garrett, at a wedding reception and spoke to her whenever he visited the station. She had nicknamed him "Sad Boy." After 9 p.m. Garrett would lock the store and conduct all transactions through a microphone and a small window. Taking advantage of their relationship, Ortiz persuaded Garrett to unlock the door. Firearm in hand, Lemus emerged from his hiding place, went inside the store, and yelled, "Look over here, bitch." Garrett cursed at Ortiz and ran upstairs, with Lemus in close pursuit. Ortiz remained downstairs and filled his pockets with loot, including $160 from the register.[1]

Moments later, Ortiz heard gunshots upstairs. He found Garrett lying on the floor near a desk.[2] Using a black felt pen supplied by Lemus, Ortiz marked Crip graffiti on the walls. Lemus returned to his car with a computer printer, returned the gun to the secret compartment, and sped from the scene.

[1]The other items included condoms, batteries, and sunflower seeds.
[2]Three gunshots to the back proved fatal.

A newspaper delivery person discovered Garrett's body around 4:30 a.m. Computer paper and telephone cords were on top of the corpse. Shortly after his arrest, Ortiz was advised of his rights and confessed to the crime. Ortiz pleaded not guilty, but offered no defense at trial.

The jury returned guilty verdicts and found the enhancements true. The trial court rejected a California Youth Authority (CYA) amenability recommendation and imposed an indeterminate life term, plus various enhancements.

## II

■ Ortiz attacks the imposition of the criminal street gang enhancement, claiming there was insufficient evidence to show the crimes were committed "for the benefit of" a criminal street gang. (Pen. Code, § 186.22, subd. (b)(1).) We have no reason to disagree with the jury's contrary determination, however.

Our role is limited: We must review the record in the light most favorable to the judgment and draw all inferences from the evidence which support the finding. (See *People* v. *Johnson* (1980) 26 Cal.3d 557, 576 [162 Cal.Rptr. 431, 606 P.2d 738]; *People* v. *Hicks* (1982) 128 Cal.App.3d 423, 429 [180 Cal.Rptr. 391].) For a gang enhancement to be found true, there must be substantial evidence supporting a finding of the existence of a " 'criminal street gang' whose members engage in a 'pattern of criminal gang activity.' " (*In re Jose T.* (1991) 230 Cal.App.3d 1455, 1462 [282 Cal.Rptr. 75].) A " 'pattern of criminal gang activity' . . . can be established by two or more incidents, each with a single perpetrator, or by a single incident with multiple participants committing one or more of the specified offenses." (*In re Nathaniel C.* (1991) 228 Cal.App.3d 990, 1003 [279 Cal.Rptr. 236].) Based on the expert testimony, it cannot seriously be disputed that one of the primary activities of the ESL gang was the commission of crimes enumerated in Penal Code section 186.22, subdivision (e), or that the felonies in this case were "committed for the benefit of, at the direction of, or in association with" the gang and "with the specific intent to promote, further, or assist" in criminal gang behavior. (Pen. Code, § 186.22, subd. (b)(1).)[3]

The evidence revealed Ortiz and Lemus were ESL members. Ortiz's admissions documented a plan to frame the Crips for a robbery in retaliation

---

[3]Long Beach Police Officer Roger Osborne, an 18-year veteran of the gang enforcement unit, was familiar with the rivalry between the ESL and Insane Crips gangs. Osborne investigated a July 1992 murder incident involving ESL member Alfredo Ramirez. Certified court records detailed Ramirez's 1993 conviction for attempted murder. According to Osborne, the crime was committed for the benefit of ESL, as "pay back" against another gang in an ongoing turf war.

Based on police reports and his investigation of this incident, Osborne surmised the graffiti left at the service station was not the work of the Insane Crips gang. In his opinion the crime

for an earlier incident involving the same gangs. Ortiz and Lemus wrote Crip gang graffiti on the walls to incriminate their rivals. There was no history of animosity or ill will between the ESL gang and the victim. In fact, Ortiz took advantage of his relationship with her to gain entry into the premises after normal closing hours. Put another way, there was ample evidence to support the gang enhancement.

## III

Ortiz next complains Penal Code section 186.22, subdivision (b)(4) does not authorize the imposition of a three-year sentence enhancement when a prisoner is serving a life sentence. The statute, he argues, and the Attorney General concedes, simply extends the minimum parole term for life prisoners and ". . . the clear import of these provisions is to limit the additional [enhancement] term provided by section 186.22 (b) to those felonies which are not punishable by imprisonment in the state prison for life. The statute is not amenable to any other rational interpretation."

Principles of statutory construction require us to turn first to the words of the statute to ascertain its intent and effectuate the purpose of the law. (*People* v. *Jones* (1993) 5 Cal.4th 1142, 1146 [22 Cal.Rptr.2d 753, 857 P.2d 1163]; *People* v. *Overstreet* (1986) 42 Cal.3d 891, 895 [231 Cal.Rptr. 213, 726 P.2d 1288].) A statute must be construed according to the fair import of its words; and, if any ambiguity is found, the legislative purpose guides its interpretation. (*People* v. *Community Release Bd.* (1979) 96 Cal.App.3d 792, 795-796 [158 Cal.Rptr. 238].) When no ambiguity is found, there is no need for construction. (*People* v. *Overstreet, supra,* 42 Cal.3d at p. 895.)

Here, we need look no further than the words of the statute itself. Penal Code section 186.22, subdivision (b)(1) authorizes the imposition of a one, two, or three-year enhancement, *"Except as provided in paragraph (4),* [when a defendant] is convicted of a felony committed for the benefit of, at the direction of, or in association with any criminal street gang, with the specific intent to promote, further, or assist in any criminal conduct by gang members . . . ." (Italics added.) Per subdivision (b)(4), "[a]ny person who violates this subdivision in the commission of a felony *punishable by imprisonment in the state prison for life,* shall not be paroled *until a minimum of 15 calendar years have been served."* (Italics added.)

Nothing in Penal Code section 186.22, subdivision (b)(4) suggests this extended parole eligibility limitation period should be combined with an

---

"benefited [ESL] because it was a pay back against the Insane Crips gang, because they were trying to frame that other street gang for a crime that they did, and that they were gonna get a pay back by doing that."

additional determinate term. To the contrary, subdivision (b)(1) specifically excepts prisoners serving a life sentence from the additional term. (Cf. Pen. Code, § 669.) The statutory language is clear and unambiguous. It requires no interpretation or construction. Any opposite conclusion would render the phrase "Except as provided in paragraph (4)" (see § 186.22, subd. (b)(1)) meaningless.[4]

Put another way, the Penal Code section 186.22 enhancement is not an additional determinate term, but an extended parole eligibility date. Accordingly, we will order the abstract of judgment modified to reflect a sentence of 26 years to life with a minimum parole eligibility date of 15 years.[5] (Pen. Code, § 1260.)

## IV

Ortiz next contends the sentence imposed (26 years to life with the possibility of parole after 15 years) was cruel and unusual punishment for a 14-year-old with a "minimal" offense record who has been deemed amenable to CYA. Because his "guilt is vicarious and based on the felony-murder rule," he contends his conviction should be reduced from first to second degree murder.

Preliminarily, we note this is not *People* v. *Dillon* (1983) 34 Cal.3d 441 [194 Cal.Rptr. 390, 668 P.2d 697]. This was not the impulsive act of a frightened teenager against an armed criminal. This was a coldly premeditated crime where the participants had plenty of time to reflect on the consequences of their actions. Ortiz knew his companion was armed and used a position of trust to gain access to locked premises. When he heard shots fired, he went upstairs, called the dying victim a name, and began to write rival gang graffiti on the walls.

Ortiz was statutorily ineligible for a CYA commitment. (Welf. & Inst. Code, § 1732.6.) And he boasted an impressive criminal record in spite of his youth. At sentencing, the court noted Ortiz's lack of remorse, "volatile temper," and "history of criminal or delinquent behavior. He has abused both alcohol and drugs. He is a member of a criminal street gang. He has committed vandalism, vehicle theft, and received stolen property. His acts have escalated in severity. [¶] [He] thrives on an antisocial lifestyle and has

---

[4]See Penal Code section 3046: "No prisoner imprisoned under a life sentence may be paroled until he or she has served at least seven calendar years or has served a term as established pursuant to any other section of law that establishes a minimum period of confinement under a life sentence before eligibility for parole, whichever is greater."

[5]Ortiz does not dispute the trial court's authority to impose a one-year consecutive Penal Code section 12022, subdivision (a)(1) armed enhancement. (See Pen. Code, § 669.)

become deeply entrenched in gang subculture." The court found previous efforts to change Ortiz's behavior were unsuccessful. He refused "to participate in programs designed to correct his unacceptable behavior. . . . Attempts at placements were terminated. He repeatedly went AWOL from these placements. [¶] It appears there is little likelihood that the defendant's criminal behavior can be significantly reduced or eliminated by a commitment to the Youth Authority, and it does not appear that the defendant's criminal behavior would be [exacerbated] by a commitment to prison."

No juror bemoaned the sentence that we know of, and the judge did not complain of imposing it. Ortiz and his pal, Termite, showed no mercy to this helpless victim. Defendant was entitled to no better result than anyone else convicted of such a brutal crime. (See *People* v. *Guinn* (1994) 28 Cal.App.4th 1130, 1146-1147 [33 Cal.Rptr.2d 791].)

The abstract of judgment is modified to reflect a sentence of 26 years to life by striking the term imposed per Penal Code section 186.22, subdivision (b)(4) and noting a 15-year minimum parole eligibility date instead. (Pen. Code, § 1260.) In all other respects, the judgment is affirmed.

Sills, P. J., and Bedsworth, J., concurred.

Appellant's petition for review by the Supreme Court was denied November 25, 1997.