[No. B160112. Second Dist., Div. Six. June 18, 2003.]

THE PEOPLE, Plaintiff and Respondent, v.
SILAS JOHNSON, Defendant and Appellant.

**COUNSEL**

Richard Jay Moller, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, Linda C. Johnson and Elaine F. Tumonis, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**COFFEE, J.**—Appellant Silas Johnson was tried before a jury and convicted of first degree home invasion robbery in concert and second degree murder with a gang allegation. (Pen. Code, §§ 211, 213, subd. (a)(1)(A),

187, subd. (a), 189, 186.22, subd. (b).)[1] In this appeal, he raises claims of prosecutorial misconduct and argues that the trial court erred when it imposed a 10-year gang enhancement on his 15-year-to-life prison sentence for second degree murder. We reject the first contention, but agree that the enhancement cannot be applied to a count carrying a life term.

FACTS

### The Robbery Count

Appellant is a member of the Liggett Street gang (LSG) who goes by the name "Punch" or "One Punch." He was an acquaintance of Andrew Callies and had purchased marijuana from him. Appellant knew that Callies owned several guns.

On November 27, 2000, appellant knocked on the door of Callies's apartment and asked to buy some marijuana. He was accompanied by two other men. While they were in the apartment, appellant pulled a gun on Callies and made him lie on the floor. One of the other men pointed a gun at Callies's girlfriend, who was also present, and made her go into a bedroom to wait with two other occupants of the apartment. The men stole 10 of Callies's 11 guns and $1,200 in cash before binding him in duct tape and fleeing the apartment. Callies broke free and called the police to report the robbery.

Appellant testified and denied committing the robbery. He claimed that he had purchased marijuana from Callies to sell to other people, but had not paid him the $1,600 he owed for that transaction. Appellant insinuated that Callies had reported a robbery because he was angry that appellant had not paid him.

### The Murder Count

On January 5, 2001, appellant attended a large informal gathering of LSG members and associates. The group had congregated outside when Dwayne Earles drove his car into a nearby alley. Earles was there to visit his child, who lived in one of the apartments in the area.

Appellant noticed Earles and asked who he was. Others in the group recognized Earles and said he was "cool." Appellant approached Earles as he got out of his car and asked, "Where you from?" Earles replied that he was "not from there" and asked, "Are you going to bang on me?" Appellant then

---

[1] All statutory references are to the Penal Code.

pulled out a gun and shot Earles several times as he attempted to flee. Earles died of his wounds.

Sergeant Chris McKinney of the Los Angeles Police Department has a substantial amount of experience with gangs and is familiar with LSG. He testified that LSG qualified as a criminal street gang and that appellant appeared to be an active member of that gang. In McKinney's opinion, the verbal exchange that preceded the shooting of Earles showed that the crime was gang related. Gang members who commit a homicide gain status within the gang, and increase the prestige of the gang by instilling fear in the community.

Appellant testified that he was not the person who shot Earles. He claimed that he was standing in the alley with several other men, including Ronald Shields, when Earles pulled his car into the alley. Shields, an LSG member, was the one who asked Earles where he was from. According to appellant, Shields pulled out a gun and shot Earles after he made a derogatory comment about LSG.

Appellant denied being a current member of LSG, although he admitted that he had been a member from 1990 until he was "jumped out" of the gang in 1995. "Jumping out" is a ritual in which a member who wants to leave a gang is beaten up by other gang members before being permitted to withdraw. According to Officer Martin Contreras of the Los Angeles Police Department, a gang member who has been "jumped out" is considered disgraced and would not continue to socialize with members of the gang.

DISCUSSION

I.

*Prosecutorial Misconduct*

██ Appellant contends the prosecutor committed misconduct by asking him argumentative questions during cross-examination that stated a personal belief in his guilt, appealed to the passions and prejudices of the jury, deliberately called for inadmissible answers, and stated facts not in evidence. Although we agree that the questions were improper, we disagree that reversal is required.

The claim of prosecutorial misconduct is based on three separate lines of questioning. The first occurred after appellant refused to disclose the name of a person from whom he had purchased an illegal firearm that he had

previously shown to robbery victim Callies. The prosecutor asked, "Sir, are you going to pick and choose what you feel like telling us today and what you don't [feel] like telling us? Is that what you're saying?" Defense counsel did not object, but the trial court stated that the question was argumentative. Appellant answered it anyway: "That's not the case at all, sir." During redirect examination, appellant provided the name of the person who had sold him the gun and explained that he had not done so before because "friends don't tell the police about other friends."

The second example of alleged misconduct occurred when the prosecutor elicited testimony from appellant that he had not expected Callies, a drug dealer, to call the police. When appellant acknowledged it had been a surprise, the prosecutor stated, "Have to be crazy to do that, wouldn't he?" Defense counsel did not object, but the court noted that the question was inappropriate and the prosecutor moved on to another topic.

The final exchange challenged by appellant came at the end of the prosecutor's cross-examination. The prosecutor asked appellant to "tell us why." Appellant replied, "I'm sorry. Why? Why what?" The prosecutor responded, "This guy was there to pick up his child. Why did you have to kill him?" Defense counsel objected to the question as argumentative and the court sustained the objection. The prosecutor continued, "Why was he killed that day?" Defense counsel made the same objection, but before the court could rule, appellant answered, "I don't know why he was killed. I never killed anyone." The prosecutor persisted, "Tell us it was something more than just this gang thing, you thought this guy was from some gang." Defense counsel objected to this question as argumentative, the court sustained the objection, and the prosecutor stated he had no further questions.

The People argue that appellant has waived his right to challenge the first two of these three exchanges because his defense attorney did not object in the trial court. (See *People v. Price* (1991) 1 Cal.4th 324, 447 [3 Cal.Rptr.2d 106, 821 P.2d 610].) Under the circumstances, we disagree. It would have been pointless for counsel to object when the trial court had already disallowed the challenged questions as improper. In any event, we will address the merits of each alleged instance of misconduct to avoid a separate discussion of appellant's claim that his trial attorney provided ineffective assistance of counsel by failing to object. (See *People v. Bautista* (1998) 63 Cal.App.4th 865, 871 [74 Cal.Rptr.2d 370].)

We reject appellant's claim that the challenged questions assumed facts not in evidence or stated a personal belief in his guilt. Nor were they likely to elicit inadmissible information or to inflame the passions or prejudices of

the jury. We agree, however, that the questions were improperly argumentative. They went beyond an attempt to elicit facts within appellant's knowledge and were instead designed to engage him in an argument. (*People v. Mayfield* (1997) 14 Cal.4th 668, 755 [60 Cal.Rptr.2d 1, 928 P.2d 485].)

The prosecutor should have refrained from asking the argumentative questions, but we are satisfied that under any standard of prejudice, those questions did not affect the outcome of the trial. (See *People v. Earp* (1999) 20 Cal.4th 826, 894 [85 Cal.Rptr.2d 857, 978 P.2d 15].) The court sustained defense counsel's objections to the last series of questions and effectively sustained its own objections to the other two. A party generally is not prejudiced by a question to which an objection has been sustained. (*People v. Pinholster* (1992) 1 Cal.4th 865, 943 [4 Cal.Rptr.2d 765, 824 P.2d 571].) To the extent appellant answered the questions, his testimony was not damaging to his defense; to the contrary, his responses were short, direct and consistent with his protestations of innocence. Reversal is not required.

II.

*Gang Enhancement*

■ The trial court sentenced appellant to prison for 15 years to life for his conviction of second degree murder. (§ 190, subd. (a).) It also imposed a 10-year consecutive term for the gang allegation that was found true as to that count. (§ 186.22, subd. (b)(1).) Appellant contends his sentence must be modified because a gang allegation under section 186.22, subdivision (b)(1) may not be appended to counts carrying a life term. We agree.

As relevant here, section 186.22, subdivision (b)(1) provides, "Except as provided in paragraphs (4) and (5), any person who is convicted of a felony committed for the benefit of, at the direction of, or in association with any criminal street gang, with the specific intent to promote, further, or assist in any criminal conduct by gang members, shall, upon conviction of that felony, in addition and consecutive to the punishment prescribed . . . , be punished as follows: [¶] . . . [¶] (C) If the felony is a violent felony, as defined in subdivision (c) of Section 667.5, the person shall be punished by an additional term of 10 years." The trial court imposed a 10-year term for the gang allegation under section 186.22, subdivision (b)(1)(C).

Second degree murder is a violent felony, and at first blush, it might appear that the 10-year enhancement applies. But section 186.22, subdivision (b)(1) only authorizes imposition of the enhancement "[e]xcept as provided in paragraphs [b] (4) and [b] (5) . . . ." (Italics added.) In other

words, the gang enhancement under section 186.22, subdivision (b)(1) may not be imposed when subdivision (b)(4) or (b)(5) applies instead. (*People v. Ortiz* (1997) 57 Cal.App.4th 480, 485-486 [67 Cal.Rptr.2d 126]; *People v. Herrera* (1999) 70 Cal.App.4th 1456, 1465 [83 Cal.Rptr.2d 307].)[2]

Section 186.22, subdivision (b)(5) provides that "any person who violates this subdivision in the commission of a felony punishable by imprisonment in the state prison for life, shall not be paroled until a minimum of 15 calendar years have been served." This provision establishes a 15-year minimum parole eligibility period, rather than a sentence enhancement for a particular term of years. Appellant's conviction for second degree murder is a "felony punishable by imprisonment in the state prison for life" within the meaning of section 186.22, subdivision (b)(5). (See *People v. Ortiz, supra,* 57 Cal.App.4th at pp. 485-486.) His case was governed by section 186.22, subdivision (b)(5), not section 186.22, subdivision (b)(1).

The People argue that the enhancement under section 186.22, subdivision (b)(1) was authorized in this case. They urge us to follow *People v. Herrera* (2001) 88 Cal.App.4th 1353 [106 Cal.Rptr.2d 793] (*Herrera*), in which a majority of the court concluded that the parole eligibility restriction of section 186.22, subdivision (b)(5)[3] did not apply when the defendant was sentenced to a term of 25 years to life for first degree murder. The court in *Herrera* reasoned that on June 2, 1998, the voters approved an amendment to section 190 prohibiting an award of conduct credits to a defendant convicted of murder. (See § 190, subds. (a), (e); see also § 2933.2.) The 15-year minimum parole eligibility period under section 186.22, subdivision (b)(5) could not supersede the 25-year minimum term for first degree murder, because this would contravene the voters' intent that first degree murderers serve a full 25 years before being paroled. (*Herrera,* at p. 1363.) Because the 15-year minimum parole eligibility period under section 186.22, subdivision (b)(5) did not apply in such cases, the trial court was free to impose the enhancement under section 186.22, subdivision (b)(1). (*Herrera,* at pp. 1364-1365.)

*Herrera* is not on point because it involved a conviction for first degree murder and a minimum term that was longer than the 15-year minimum

---

[2]Section 186.22, subdivision (b)(4) is not relevant to this case. It currently provides that when the crimes of home invasion robbery, carjacking, extortion and witness intimidation are committed for the benefit of a criminal street gang, the defendant shall receive "an indeterminate term of life imprisonment," instead of the determinate term normally applicable to those felonies.

[3]Section 186.22, subdivision (b)(5) was formerly numbered subdivision (b)(4) and is referred to as such in the *Herrera* opinion. For the sake of clarity, we refer to the subdivision by its current designation of (b)(5).

parole eligibility period under section 186.22, subdivision (b)(5). A minimum parole eligibility period of 15 years is entirely consistent with appellant's sentence of 15 years to life and in no way undermines the voters' intent that murderers serve the full minimum terms of their life sentences.

Nor are we persuaded by *Herrera*'s underlying premise—that the 15-year minimum parole eligibility provision of section 186.22, subdivision (b)(5) is an alternative minimum term that supplants the minimum term for first or second degree murder. Section 186.22, subdivision (b)(5) simply provides that when a gang allegation has been found true, a defendant serving a life sentence, *whatever its minimum term*, must serve at least 15 years in actual custody before being considered for parole. In some cases, the application of the 15-year minimum parole eligibility provision will increase the time a defendant actually spends in custody.[4] In other cases, it will not necessarily do so, although a true finding on a gang enhancement is a factor that may be considered by the Board of Prison Terms when determining a defendant's release date, even if it does not extend the minimum parole date per se. (*Herrera, supra,* 88 Cal.App.4th at p. 1370 (dis. opn. of Grignon, J.).)

The People observe that the 15-year parole eligibility provision of section 186.22, subdivision (b)(5) will have no practical effect when the defendant is serving a life sentence that already requires him to serve a minimum term of 15 years or more. This may be so, but this arguable disparity does not allow us to disregard the plain language of section 186.22, subdivision (b)(1) and impose an enhancement where none is authorized. Section 186.22, subdivision (b)(1) unambiguously excepts crimes carrying life sentences from its enhancement provisions. (*People v. Ortiz, supra,* 57 Cal.App.4th at pp. 485-486; *People v. Herrera, supra,* 70 Cal.App.4th at p. 1465.) We adhere to the plain language of the statute unless to do so would produce an absurd result that the Legislature obviously did not intend. (*People v. Birkett* (1999) 21 Cal.4th 226, 231 [87 Cal.Rptr.2d 205, 980 P.2d 912].) Following the plain language of section 186.22, subdivision (b)(1) does not produce an absurd result; the most that can be said is that it will not increase the defendant's actual custody time in all cases where a gang allegation is found true.

---

[4]For example, a defendant convicted of a crime that carries a life sentence without a specified minimum term must ordinarily serve seven calendar years in prison before being released on parole. (§ 3046.) If a gang allegation is found true in such a case, the defendant will be required to spend a full 15 years in custody, thus increasing his minimum possible prison sentence by eight years. Similarly, a defendant convicted of a second degree murder committed before June 2, 1998, is entitled to earn conduct credits against his 15-year-to-life sentence. (*People v. Cooper* (2002) 27 Cal.4th 38, 40, fn. 2 [115 Cal.Rptr.2d 219, 37 P.3d 403].) In such cases, a finding on a gang allegation ensures that the defendant will serve the full 15 years of the minimum term, notwithstanding the availability of conduct credits.

Since its enactment by the Legislature, section 186.22, subdivision (b) has provided that in cases involving an indeterminate sentence, the effect of a true finding on a gang allegation is a 15-year minimum parole date, rather than an enhancement for a term of years. No other provision has ever been made for cases in which the minimum parole date is already 15 years or greater. Although section 186.22 was amended in several respects when the voters enacted Proposition 21 in 2000, the distinction between a term of years enhancement for most determinate sentences and the 15-year minimum parole date for indeterminate sentences was maintained. The Legislature (and later, the voters) might well have determined that the public interest in removing violent gang members from society is adequately addressed in cases where the defendant is already serving a term of 15 or 25 years to life. It would not be unreasonable to conclude that the parole board is in the best position to determine the appropriate release date of such defendants after they have served the 15 years in actual prison custody that are mandated by section 186.22, subdivision (b)(5). If this was not the intent behind the statute, section 182.66, subdivision (b) should be amended to specify the effect of a true finding on a gang allegation when the defendant receives a life sentence with a minimum term that exceeds 15 years.

■ To summarize: Section 186.22, subdivision (b) establishes alternative methods for punishing offenders who have committed felonies for the benefit of a criminal street gang. For most felonies punishable by a determinate term, the sentence will be enhanced by a term of years under section 186.22, subdivision (b)(1). But when the defendant has been convicted of a felony that already carries a life sentence, there is no specific enhancement for a term of years. Instead, section 186.22, subdivision (b)(5) requires that the defendant serve a minimum of 15 calendar years before being considered for parole. (See *People v. Sengpadychith* (2001) 26 Cal.4th 316, 327 [109 Cal.Rptr.2d 851, 27 P.3d 739].) The 15-year minimum parole eligibility period of section 186.22, subdivision (b)(5) applies to all life sentences without qualification, and is imposed in lieu of the determinate enhancement under subdivision (b)(1), not in addition to it. (*People v. Ortiz, supra,* 57 Cal.App.4th at p. 486.)[5]

## DISPOSITION

The sentence is modified to delete the 10-year term that is based on the true finding under section 186.22, subdivision (b). The superior court shall modify the abstract of judgment to reflect a sentence of 15 years to life on the second degree murder count (count 2), and shall note a 15-year minimum

---

[5]Our holding is consistent with a recent decision by our colleagues in the Fourth District, Division One. (*People v. Harper* (2003) 109 Cal.App.4th 520 [135 Cal.Rptr.2d 120].)

parole eligibility date on that count pursuant to section 186.22, subdivision (b)(5). This modification does not affect the nine-year consecutive sentence for first degree robbery under count 1.

The clerk of the superior court shall forward a copy of the amended abstract of judgment to the Department of Corrections. As so modified, the judgment is affirmed.

Gilbert, P. J., and Perren, J., concurred.

Appellant's petition for review by the Supreme Court was denied September 10, 2003.