Filed 5/6/14  P. v. Mercado CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | B243894 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA378007) |
| v. | |
| PIERRE A. MERCADO, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County. Curtis B. Rappe, Judge.  Affirmed in part, reversed in part, and modified with directions in part.

Brett Harding Duxbury, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Shawn McGahey Webb and Rene Judkiewicz, Deputy Attorneys General, for Plaintiff and Respondent.

_____

In a first amended information, the Los Angeles District Attorney's Office charged defendant and appellant Pierre A. Mercado with five counts of attempted murder (Pen. Code, §§ 664/187, subd. (a); counts 1, 2, 6, 7, & 12),[1] two counts of conspiracy to commit murder (§ 182, subd. (a)(1); counts 4 & 8), four counts of murder (§ 187, subd. (a); counts 5, 9, 10, & 11), one count of kidnapping for robbery (§ 209, subd. (b); count 3), and one count of kidnapping for extortion (§ 209, subd. (a); count 13). It was also alleged that appellant committed the attempted murders charged in counts 1, 2, 7, and 12 willfully, deliberately, and with premeditation within the meaning of section 664, subdivision (a). As to counts 1 through 3 and 13, the information further alleged that appellant personally used a firearm, a handgun, within the meaning of section 12022.5, subdivision (a). As to all counts, it was alleged that appellant committed the crimes for the benefit of, at the direction of, and in association with a criminal street gang with the specific intent to promote, further, and assist in criminal conduct by gang members (§ 186.22, subd. (b)(1)).

During the prosecutor's case-in-chief, the prosecutor moved to dismiss the conspiracy counts (counts 4 & 8). The trial court granted the motion.

The jury found appellant guilty of the remaining counts. It also determined that appellant committed counts 1, 2, 6, 7, and 12 willfully, deliberately, and with premeditation (§§ 664/189), that all of appellant's crimes were gang-related (§ 186.22, subd. (b)(1)), and that appellant personally used a handgun in committing the crimes charged in counts 1, 2, 3, and 13 (§ 12022.5, subd. (a)).

The trial court sentenced appellant to consecutive terms of 25 years to life in prison on each of the murder counts and consecutive indeterminate terms of life on the attempted murder and kidnapping for robbery counts. Appellant was also sentenced to the consecutive midterm of two years in prison on each of the 11 gang enhancements, and subjected to a minimum parole eligibility period of 15 years. He was sentenced to the consecutive midterm of four years in prison on the three firearm enhancements. The trial

---

[1]     All further statutory references are to the Penal Code unless otherwise indicated.

court stayed the term imposed on the kidnapping for extortion count. Appellant was ordered to pay various fees and was given 1,819 days of custody credit.

Appellant appeals, arguing: (1) Insufficient evidence supports the kidnap for extortion conviction; (2) Because the prosecution failed to allege that a section 664, subdivision (a) deliberation pertained to count 6, the trial court was unauthorized to impose a deliberation enhancement on that count; and (3) The trial court erred in imposing two-year gang enhancements on all counts in addition to the minimum parole eligibility period of 15 years.

We agree with appellant in part. We conclude that insufficient evidence supports the kidnap for extortion conviction and therefore reverse the conviction on this count. We also agree with appellant and the People that the trial court erred in imposing two-year gang enhancements on all of the counts in addition to the minimum parole eligibility period of 15 years; we therefore modify the judgment vacating the two-year gang enhancements. In all other respects, the judgment is affirmed.

## FACTUAL AND PROCEDURAL BACKGROUND

*Attempted Murders of Timothy Mellon (count 1) and Anthony Evans (count 2)*

On July 5, 1995, Anthony Evans and Timothy Mellon were driving on the freeway when they were shot at by appellant, who was with two Asian men in a Toyota Supra.

*Murders of Cheng Peng (Peng, count 9), Paul Vu (Vu, count 10), and Ben Liao (Liao, count 11), and the Attempted Murder of Michael Fortescue (Fortescue, count 12)*

On July 31, 1995, Fortescue, Vu, Liao, and Peng all drove in a white Nissan Maxima to a café in a mini-mall. Truong Dinh (Dinh), Son Bui, Sothi Mehn, and David Evangalista (Evangalista) were also at the café. Dinh called Ky Ngo's brother sometime before midnight to say that the Asian Boyz gang's rival gang, Wah Ching, was at the café.

About 10 to 15 minutes after Dinh's phone call, appellant, appellant's brother Marvin Mercado (Marvin), and other Asian Boyz gang members showed up in two cars, a gold Legend and a blue Subaru. The Asian Boyz gang members went to the back of the mall to agree on a plan to deal with their perceived rivals in the café. They got in their

3

cars and parked near a building behind the mall, where they agreed to wait for their rivals and shoot them.

At around midnight, Fortescue's group left the café in the Maxima. When the Maxima passed, appellant signaled with his car's blinkers to let his fellow gang members know that the rivals were coming. This signal had been discussed at the meeting. Appellant and his associates followed in their three cars, with appellant in the lead. Appellant and his associates followed Fortescue's group onto the freeway, where they shot at the Maxima. Vu, Liao, and Peng died from gunshot wounds. Fortescue jumped out of the car to get help. Appellant followed him but, because there were too many witnesses on the street, appellant drove away.

*Aggravated Kidnapping of Viphear Tan (Tan, counts 3 & 13)*

When Tan was about to drive to work between 4:00 and 4:30 a.m. on February 23, 1996, he was accosted by appellant, Marvin, Dinh, and Chan. Appellant and his accomplices were all armed. They grabbed Tan, pulled his hood down to cover his face, took the keys from his hand, tied his hands with duct tape, and then pushed him towards his house. They unlocked the front door, forced Tan back inside, and sat him on his living room couch. They duct taped Tan's mouth so that he could not scream, and duct taped his hood over his face.

Appellant pointed a gun a Tan's head. Tan heard the other invaders search the house for valuables. The invaders asked questions about the removable property in the house. Tan did not resist. He heard somebody kick through the door to his elderly parents' bedroom. His mother begged not to be hurt. She told the invaders to take whatever they wanted.

Tan's small dog barked and climbed onto Tan's lap, and appellant fired one shot at the ceiling. Tan was pulled into his brother's bedroom and forced onto the floor. He could tell that his brother and parents were also in the bedroom. Tan heard his mother and father pleading for their lives. They told the invaders to take anything. One of the assailants kicked Tan in the head. He was still duct taped.

4

After the assailants left, Tan freed himself. Tens of thousands of dollars from his business were missing, as well as his parents' and his jewelry. He had a safe and his mother had a safe, and Tan believed that his mother's safe was also missing.

Meanwhile, appellant returned home and had a small safe with him.

*Murder of Tony Nguyen (count 5) and the Attempted Murders of Sunny Park (count 6) and Son Hoa Le (count 7)*

On March 16, 1996, Asian Boyz gang members Paulo Prado (Prado), Jerry Pham (Pham), and a person remembered as Tien went to a party in the San Fernando Valley. Pham told his fellow gang members about the party. There were at least 100 people at the party.

Prado and Pham believed that rival gang members were at the party, so they left, went to a donut shop, and used a pay phone to contact Marvin "for backup," that is "[t]o shoot that place up." Prado paged appellant, who was at the movies. After paging appellant, Pham and Prado returned to the party.

Appellant left the movie theater and went to his house, where he saw Marvin, Chan, and Evangalista. They discussed a plan, which included shooting any rivals they encountered at the party.

A fight at the party ensued. Someone yelled that there was a grenade. At least 30 or 40 gunshots were fired in the parking lot. Sunny Park, Tony Nguyen, and Son Hoa Le had all been shot; Nguyen died as a result of his gunshot wounds.

*Gang Evidence*

Dinh testified on behalf of the prosecution in exchange for reduced charges and leniency in another case. He testified about the Asian Boyz gang and its activities. Gang expert Lieutenant Walter Teague of the Los Angeles Police Department also offered expert testimony about gangs, specifically the Asian Boyz gang

**DISCUSSION**

I. *Kidnapping for Extortion (count 13)*

Appellant argues that his conviction for kidnapping for extortion (count 13) is not supported by sufficient evidence. As a reminder, the trial court stayed the term imposed on this count.

A. Standard of Review

The parties agree that we review the kidnap for extortion conviction for substantial evidence. (*People v. Mincey* (1992) 2 Cal.4th 408, 432.)

B. Analysis

Section 209, subdivision (a), sets forth multiple types of aggravated kidnappings, including the crime of kidnapping for extortion. It provides, in relevant part: "Any person who seizes, confines, . . . abducts, . . . kidnaps or carries away another person by any means whatsoever with intent to hold or detain, or who holds or detains, that person . . . to commit extortion or to exact from another person any money or valuable thing, or any person who aids or abets any such act, is guilty of a felony." (§ 209, subd. (a).)

Section 518 defines extortion as "the obtaining of property from another, with his consent, . . . induced by a wrongful use of force or fear." That "[f]ear . . . may be induced by a threat . . . to do an unlawful injury to the person of the individual threatened." (*People v. Goodman* (1958) 159 Cal.App.2d 54, 61.) "To constitute extortion the victim must consent, albeit it is a coerced and unwilling consent, to surrender . . . his property; the wrongful use of force or fear must be the operating or controlling cause compelling the victim's consent to surrender the thing to the extortionist." (*Ibid.*)

The crimes of robbery and extortion are similar and "sometimes difficult to distinguish." (*People v. Torres* (1995) 33 Cal.App.4th 37, 50 (*Torres*).) "Both crimes share the element of an acquisition by means of force or fear." (*Ibid.*) "A distinction traditionally drawn between robbery and extortion is that a person commits robbery when he threatens immediate harm to the victim whereas he commits extortion when he threatens future harm to the victim." (*Id.* at p. 52, fn. 7.) Significantly, "in extortion the property is taken with the victim's consent whereas in robbery it is taken against his

6

will." (*In re Stanley E.* (1978) 81 Cal.App.3d 415, 420.) Extortion is not a lesser included offense of robbery. (*Ibid.*)

The present case is the archetypical home invasion robbery, where the victims acted without consent and against their will. There is no evidence that Tan and his parents consented to surrender the family's property. Certainly they were begging for their lives; they were terrified that appellant and fellow gang members would shoot them. But there is no evidence that appellant and his cohorts sought, let alone cared if they received, consent for the robbery that they planned to, and did, commit.

For this reason, we are persuaded by appellant's reliance upon *Torres*, *supra*, 33 Cal.App.4th 37. In *Torres*, the defendant pointed his gun at one victim, Gonzales, ordered Gonzales up against a wall, and asked him about money. (*Id*. at p. 51.) The defendant then stopped another victim, Argueta, demanded money "now," and then put his gun to Argueta's head, telling him, "Just give me [the money] now or I put your brains out." (*Ibid*.) The Court of Appeal concluded that this evidence did not support a charge of attempted extortion. After all, holding a gun to Argueta's head amounted to a threat of immediate harm, negating any specific intent to obtain Argueta's money through consent. (*Id*. at pp. 51–52 & fn. 7.) Likewise, the defendant held a gun to Gonzales, "thereby demonstrating an intent to take Gonzales's money through force and against his will rather than with his consent induced by fear." (*Id*. at p. 52.)

That is what occurred here. Appellant and his fellow gang members tied up Tan and his family members while they committed an armed invasion of their home. It is true that the victims did not resist the Asian Boyz and that Tan's parents told the perpetrators to take anything they wanted. But their "consent" was obtained by the immediate application of force (forcible entry, detention by duct tape) and the immediate threat of greater force (the number of perpetrators and the guns they wielded) for noncompliance. At no point did the Asian Boyz evince an intent to gain the victims' consent. Rather, as in *Torres*, the perpetrators' brazen entry, use of duct tape, and wielding of firearms demonstrated their intent to take the victims' property through force against their will.

7

(*Torres*, *supra*, 33 Cal.App.4th at p. 52.) These facts amount to quintessential robbery, not extortion.

Accordingly, we reverse the conviction of kidnapping for extortion.

II. *Appellant Received Adequate Notice of the Deliberation Enhancement on Count 6*

The summary page of the first amended information listed all of the attempted murder counts, including count 6, as being charged under section 664. With regards to counts 1, 2, 7, and 12, a deliberation enhancement was also alleged. According to appellant, because that enhancement was not alleged with regard to count 6, this enhancement finding must be vacated.

A defendant has "a cognizable due process right to fair notice of the specific sentence enhancement allegations that will be invoked to increase punishment for his crimes." (*People v. Mancebo* (2002) 27 Cal.4th 735, 747.) That said, even though an information may not include a sentence enhancement sought by the prosecution, the sentence enhancement may be found true against a defendant as long as he otherwise received notice of the factual and statutory bases of the enhancement. (*People v. Riva* (2003) 112 Cal.App.4th 981, 1003.)

Here, appellant had adequate notice of the factual and statutory bases of the enhancement alleged against him. At the preliminary hearing, there was testimony that the count 5 first degree murder victim (Tony Nguyen) and the count 6 victim (Sunny Park) were shot while next to each other. And, at trial, there was ample evidence that they were victims of a planned, premeditated, and deliberate shooting spree.

Following the presentation of evidence, the trial court instructed the jury in writing and orally that if it found appellant guilty of attempted murder "under Counts One, Two, Six, Seven, and/or Twelve, [it] must then decide whether the People have proved the additional allegation that the attempted murder was done . . . with deliberation and premeditation." Defense counsel did not object to this instruction, and did not object to the verdict form, including the form for count 6, which mirrored the forms for counts 7 and 12.

8

Under these circumstances, the appellate record establishes that appellant had actual notice of the premeditation and deliberation allegation against him as to count 6. (*People v. Riva*, *supra*, 112 Cal.App.4th at p. 1003.) It follows that appellant's due process rights were not violated.

*People v. Mancebo*, *supra*, 27 Cal.4th 735 is distinguishable. In that case, the court considered the specific pleading requirement of the One Strike Law—requirements that are not at issue in this case. (*Id*. at p. 743.) Moreover, the multiple victim circumstance was not pled or determined to be true in a separate finding by the jury; in fact, the issue did not arise until sentencing. (*Id*. at p. 745.) In contrast, here, appellant received actual notice of the premeditation and deliberation allegation at various points prior to and during trial, and counsel agreed to the jury instruction and verdict form that reflected that the premeditation and deliberation allegation applied to count 6.

III. *The Trial Court Erred in Imposing Two-Year Gang Enhancements*

Appellant argues that the trial court erred by applying both the parole eligibility provision of section 186.22 and imposing two-year gang enhancements. The People concede error.

We agree with the parties that under both the 1994 and 1995 versions of section 186.22, since all of appellant's crimes were punishable by imprisonment for life, the trial court erred in imposing two-year gang enhancements on all of the counts, in addition to the minimum parole eligibility period of 15 years. (See *People v. Ortiz* (1997) 57 Cal.App.4th 480, 486.) Thus, we modify the sentence, vacating the two-year gang enhancements.

**DISPOSITION**

The judgment of conviction for kidnap for extortion (count 13) is reversed. The two-year gang enhancements are vacated; the judgment is modified accordingly and the trial court is directed to amend the abstract of judgment to reflect the correct sentence. In all other respects, the judgment is affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

_____, J.
ASHMANN-GERST

We concur:

_____, P. J.
BOREN

_____, J.
CHAVEZ